**Paolo CASALENA, Petitioner,**

v.

**U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 92–1710.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1992.

Decided Jan. 13, 1993.

Konstantine John Prevas, Prevas & Prevas, Baltimore, Md., argued, for petitioner.

John David Beling, U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, Anthony W. Norwood, Civ. Div., on brief), for respondent.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and LUTTIG, Circuit Judges.

OPINION

LUTTIG, Circuit Judge:

Petitioner Paolo Casalena appeals from an order of the Board of Immigration Appeals ("BIA"), denying his application for a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). Finding no abuse of discretion, we affirm the decision of the BIA.

## I.

Casalena is forty-two years old and has lived in the United States since his arrival from Italy in 1961 at the age of ten. R. 28. He has been married four times and has two daughters in the United States. *Id.* His parents, who are United States citizens and whose needs he attends to, live in Baltimore, Maryland. *See id.* at 28–29, 275.

Casalena has a long criminal history. He has been arrested and charged with various drug offenses repeatedly since 1971. He has been convicted of such offenses "around five times," by his own admission, *id.* at 78.[1] Although he claims that he is rehabilitated and no longer uses drugs, Casalena concedes that he has attended only one Narcotics Anonymous meeting (in 1988) and has passed only one urinalysis test. *Id.* at 3, 33, 72, 75, 262.

On May 12, 1987, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against Casalena based upon his 1978 conviction for distributing marijuana. *See* Immigration and Nationality Act, § 241(a)(11), 8 U.S.C. § 1251(a)(11) (1988).[2] Casalena conceded deportability, *see* R. 27, 278, but sought a waiver of deportation under section 212(c), 8 U.S.C. § 1182(c).[3] After a hearing on February 9, 1988, the immigration judge weighed the equities and denied Casalena's application for a waiver of deportation. On May 18, 1992, the BIA affirmed, and Casalena now appeals from its decision.

## II.

Decisions to grant waivers of deportation are committed to "the discretion of the Attorney General," *see* 8 U.S.C. § 1182(c), or his delegate, the BIA. In applying for such discretionary relief, the alien bears the burden of demonstrating that his application merits favorable action. *E.g., Blackwood v. INS,* 803 F.2d 1165, 1167 (11th Cir.1986). We review the BIA's denial of a section 212(c) waiver for abuse of discretion, and will uphold the decision unless it was arbitrary or capricious. *E.g., Ghassan v. INS,* 972 F.2d 631, 635 (5th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3420 (U.S. Nov. 20, 1992) (No. 92–872); *Blackwood,* 803 F.2d at 1168.

The BIA found that while Casalena's "lengthy residence here, now 31 years, his extensive family ties, and the hardship his deportation will cause to his family and himself, constitute[d] unusual and outstanding equities," "these equities [did] not outweigh the adverse matters of record, namely the respondent's criminal record of repeated drug offenses over a period of 16 years through 1987." R. 1. The Board therefore concluded that Casalena "ha[d] not shown that he merits a favorable exercise of discretion." *Id.*

■ Casalena argues that the BIA "abused its discretion and acted in an arbitrary and capricious manner" in reaching this conclusion because it "ignored positive

---

**1.** There appears to be some confusion over the precise number of Casalena's convictions. Casalena was convicted of the possession of marijuana with intent to distribute on July 1, 1987 in Maryland, *see id.* at 162–68; he was convicted of the possession of marijuana in 1981 in Indiana, *see id.* at 189–216; he was convicted of the distribution of marijuana on April 16, 1978 in Maryland, *see id.* at 217–24; and he received probation before judgment for the possession of marijuana with intent to distribute in 1971 in Maryland, *see id.* at 228–54. In addition, Casalena was arrested and charged of marijuana-related offenses in 1974, 1983, and 1985. These charges, however, were eventually dropped. *See id.* at 169–88, 225–27. The Board considered these latter charges in exercising its discretion to deny waiver of deportation. Its consideration of these charges, of course, was not error.

**2.** 1990 Amendments to the Act redesignated this section as § 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i).

**3.** Although § 212(c) by its terms applies only to "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily ... and who are returning to a lawful unrelinquished domicile of seven consecutive years," 8 U.S.C. § 1182(c), both the courts and the BIA have extended its applicability to deportable aliens who have met the seven-year requirement but have not left the country. *See, e.g., Chiravacharadhikul v. INS,* 645 F.2d 248, 248 n. 1 (4th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *Francis v. INS,* 532 F.2d 268, 272–73 (2d Cir.1976); *Matter of Silva,* 16 I. & N.Dec. 26, 30 (B.I.A.1976).

factors which are enunciated in [*Matter of*] *Marin*, [16 I. & N.Dec. 581 (BIA 1978) ]," [4] in particular his employment history, his property ties, and letters attesting to his good character. Petitioner's Br. at 13, 18. At bottom, his argument is that the BIA's failure specifically to mention in its opinion each of the *Marin* factors relevant to his application constitutes reversible error. We disagree. *Marin* does not require express recognition of any of the factors that it enumerated.[5] As the Seventh Circuit recently explained:

> The Board need not ... "write an exegesis on every contention. What is required is merely that it consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Becerra v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987).... The Board need not ... mention every relevant fact in its opinion.

*Vergara–Molina v. INS*, 956 F.2d 682, 685 (7th Cir.1992) (rejecting applicant's argument that BIA had committed reversible error by "fail[ing] to consider crucial factors in the *Marin* balancing test"); *see also Martinez v. INS*, 970 F.2d 973, 976 (1st Cir.1992) ("Where, as here, the Board has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.").

■ In the instant case, the BIA explicitly stated that it had reviewed the entire record, cited *Marin*, and conducted "a balancing of the factors evidencing [Casalena's] undesirability as a permanent resident against the social and humane considerations." *See* R. 1, 3. Indeed, the BIA actually found that Casalena had in his favor certain "unusual or outstanding equities," and it specifically identified those equities. It concluded, however, that these equities were not sufficiently "unusual or outstanding" to outweigh the adverse factor of his drug record.[6] *See Marin*, 16 I. & N. Dec. at 586 n. 4 ("In view of ... the disfavor with which we view such offenses," drug offenders seeking section 212(c) relief face an even heavier burden than do "those convicted of other crimes."). That the BIA did not explicitly discuss Casalena's employment history, his homeownership, or the letters written on his behalf does not constitute reversible error. The BIA might simply have found those factors insufficiently significant to merit individual mention, a finding for which there would have been record support.[7]

---

4. *Marin* recites some of the "favorable" and "adverse" factors that have influenced decisions on applications for waiver of deportation:

> Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the [applicant] was of young age), evidence of hardship to the [applicant] and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, rehabilitation if a criminal record exists, and other evidence attesting to [an applicant's] good character (e.g., affidavits from family, friends, and responsible community representatives).

*Id.* at 584. "Adverse" factors include: "the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of [an applicant's] bad character or undesirability as a permanent resident of this country." *Id.*

5. *Marin* does not even purport to require consideration of all of the factors enumerated; it merely recites a nonexhaustive list of factors that in prior cases had been considered to be either "favorable" or "adverse." Moreover, the Board specifically warned against the adoption of "an inflexible test," noting "[t]he undesirability and 'difficulty, if not impossibility, of defining any standard in discretionary matters of this character.'" 16 I. & N.Dec. at 584 (citation omitted).

6. Of course, "[a] showing of outstanding equities does not compel relief; in exercising its discretion, the BIA may determine that the seriousness of the offense and other negative factors outweigh even unusual or outstanding equities." *Akinyemi v. INS*, 969 F.2d 285 (7th Cir. 1992) (citing *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1247 (7th Cir.1991)).

7. The evidence as to Casalena's homeownership and employment history was not all favorable. For instance, Casalena and his present wife were indicted for using their home "as a common nuisance, for the purposes of storing, con-

*See Ghassan,* 972 F.2d at 635 (rejecting applicant's argument that BIA "failed to consider all of the relevant evidence" and concluding that "the BIA did consider all of [his] evidence—*it just did not find it compelling.*" (emphasis added)). We conclude that the BIA sufficiently explained its decision to show that it "has heard and thought and not merely reacted," in denying Casalena's application for a waiver of deportation.[8] Accordingly, we deny the petition for review and affirm the decision of the BIA.

AFFIRMED.

cealing, administering or dispensing controlled dangerous substances." R. 166. Similarly, Casalena did not hold any single job—other than when he assertedly was "self-employed"—for more than two years during the seven years prior to his application for a § 212(c) waiver. *See id.* at 275.

**8.** We do not read *Diaz–Resendez v. INS,* 960 F.2d 493 (5th Cir.1992), the authority upon which Casalena principally relies, as to the contrary. *Diaz–Resendez* simply requires that the BIA

have "actually considered or meaningfully addressed" the relevant factors. *Id.* at 497. We are satisfied from our examination of the BIA's opinion in this case that the Board considered thoughtfully all of the relevant evidence. To the extent that *Diaz–Resendez* may be read to require the BIA to be more explicit than it was in this case, however, we disagree with that decision and align ourselves with the more deferential standard of the First and Seventh Circuits. *See Martinez, supra; Vergara–Molina, supra.*